Edward T. MOLINARO, and Anthony P. Catanzaro, Plaintiffs,

v.

SEARS, ROEBUCK AND COMPANY, Defendant.

No. 76 CIV. 2582(MP).

United States District Court, S. D. New York.

Oct. 24, 1979.

E. Leigh Hunt, Wilmington, Del., for plaintiff Molinaro.

Kenyon & Kenyon, New York City, for defendant by George E. Badenoch, New York City.

## OPINION

POLLACK, District Judge.

Defendant moves for summary judgment in its favor pursuant to Fed.R.Civ.P. 56. For the reasons shown hereafter the motion will be granted.

This is one of more than 20 actions instituted by these plaintiffs against various manufacturers, distributors, and retailers of radio receiving equipment, alleging infringement of U. S. Patent 2,906,875, issued on September 29, 1959 to plaintiff Edward T. Molinaro, and having expired on September 29, 1976. Co-plaintiff Anthony P. Catanzaro is an assignee of a one-half interest in the patent. Plaintiffs' claim in the case at hand is that certain radio receivers sold by defendant Sears, Roebuck and Company infringe the Molinaro patent.

All proceedings in this case have been stayed since September 15, 1976, pending the outcome of various summary judgment motions in a related case in Federal District

Court in Delaware. Defendant Sears now moves for summary judgment on the grounds that plaintiffs are collaterally estopped from asserting this claim for infringement of their patent by the decision in *Catanzaro v. Masco Corp.,* 423 F.Supp. 415 (D.Del.1976), *aff'd per curiam sub nom. Catanzaro v. International Telephone and Telegraph,* 575 F.2d 1085 (3d Cir.), *cert. denied,* 439 U.S. 989, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978).[1]

Plaintiffs at first interposed only a Rule 56(f)[2] affidavit in opposition to defendant's papers, alleging their present inability to submit proper affidavits in opposition due to a lack of discovery, particularly on certain devices sold by Sears which were mentioned for the first time in a supplemental affidavit to the papers in support of the motion for summary judgment. However, plaintiffs failed to seek such discovery at any time thereafter during a period of more than 3½ months. Subsequently, plaintiffs sought and received additional time on this motion to take into account a pending decision in *Molinaro v. Sonar Radio Corp.,* 72 Civ. 882 (E.D.N.Y. Oct. 5, 1979). Plaintiff Molinaro[3] has, during the time of this extension, prepared an answering affidavit to the motion for summary judgment and submitted a statement of disputed facts in accordance with Local Rule 9(g). Before argument on this motion could be heard, Judge Bartels rendered an opinion in *Sonar* in favor of defendant, having stopped the trial at the close of plaintiffs' case pursuant to Sonar's motion under Fed.R.Civ.P. 41(b), *Sonar, supra.*

The dispositive issue on this motion is whether the Molinaro affidavit and statement of disputed facts successfully raise a genuine issue of triable fact or whether the decisions in *Masco, Schlumberger,* and *Sonar, supra,* estop plaintiffs from relitigating claims identical to those they have repeatedly lost in other courts. Upon consideration of all the affidavits of the parties and the opinions in the related cases, I find that plaintiffs have not successfully raised a genuine issue that requires a trial for its resolution, but on the contrary, are collaterally estopped from relitigating claims that have been tested, and failed, before.

■ The starting point of the analysis required in this case is to note that collateral estoppel is fully available in patent litigation. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *see also Molinaro and Catanzaro v. Schlumberger, Ltd.,* 76 Civ. 2583 (S.D.N.Y.1978). The estoppel sought by defendant here is that the opinion in *Masco, supra,* precludes plaintiffs from even claiming that the scanners sold by Sears are covered by the Molinaro patent.

In *Masco,* Judge Stapleton defined two distinct types of radio scanners: a "termination of signal" device, which "resumes its tuning upon the termination of the signal being received, as opposed to one which resumes tuning after a predetermined time interval without regard to whether the signal has stayed on the air or not." 423 F.Supp. at 420. Judge Stapleton found that the patent-in-suit covered only the latter type of device, the "time interval de-

---

**1.** In *Molinaro and Catanzaro v. Schlumberger,* 76 Civ. 2583 (S.D.N.Y.1978), Judge Weinfeld awarded summary judgment in favor of defendant and held plaintiffs' claim of infringement on the same patent to be collaterally estopped by the decision in *Masco, supra.*

**2.** Fed.R.Civ.P. 56(f) reads:

*When Affidavits are Unavailable.* Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a

continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**3.** Throughout most of these actions, Molinaro and Catanzaro had been acting *pro se.* On the motion at hand, Molinaro was represented by counsel, E. Leigh Hunt, Esq. of Wilmington, Delaware. Plaintiff Catanzaro has not appeared, but has informed the Court that for this motion he adopts the papers and arguments of his co-plaintiff.

vice." Defendant Masco was awarded summary judgment on the strength of uncontradicted affidavits that Masco manufactured only "termination of signal" devices, and therefore could not have infringed plaintiffs' patent.

On the present motion, defendant Sears submits an affidavit of Louis A. Schonegg, an electrical engineer, attesting to the fact that the three receivers sold by Sears are "termination of signal" devices, and therefore beyond the scope of the Molinaro patent as defined by Judge Stapleton. A subsequent affidavit of Richard G. Schultz—an employee of defendant—points out that it was discovered that Sears had sold four and not, as originally thought, three models of radio receiver. In a supplemental affidavit, Mr. Schonegg claims to have studied the fourth, recently discovered device, and affirms that it also is a "termination of signal" device. Attached as exhibits to this supplemental affidavit are service and instructional manuals[4] and a schematic diagram for the newly discovered device.

Defendant argues that this is sufficient grounds for holding that the Sears receivers are "termination of signal" devices and therefore by definition beyond the scope of the patent-in-suit as authoritatively construed in *Masco*. Plaintiff answers, however, that the Sears receivers contain a "scan delay"[5] device that in effect converts the Sears receivers into "time interval" devices. Defendant argues that the inclusion of a "scan delay" does not transform a "termination of signal" receiver into a "time interval" receiver, and that three courts have so held.

First, defendant argues, after Judge Stapleton handed down his opinion in *Masco*, plaintiff Catanzaro requested reconsideration on the exact grounds urged in opposition to summary judgment here—namely, that the "scan delay" feature made the Masco radios "time interval" rather than "termination of signal" devices. The petition for reconsideration was denied on January 6, 1977.[6]

Similarly, after Judge Weinfeld held the plaintiffs' claim in *Molinaro v. Schlumberger*, 76 Civ. 2583 (S.D.N.Y.1978), collaterally estopped by the decision in *Masco*, Catanzaro again moved for reconsideration on the basis of the "scan delay" point. Judge Weinfeld also denied that motion in an unpub-

**4.** *See, e. g.,* Exhibit A, Instruction Manual for the Tennetrac II, under the heading "Channel Program": "Channels which have a continuous carrier signal (weather at 162.55 or 162.40 MHz, radio-telephone, etc.) should be programmed INACTIVE and selected manually, as the scanner will lock in on the carrier and discontinue scanning until stepped manually to the next channel." Plaintiffs' patented device would not have this problem but would merely pause over these frequencies for the 10 or 20 second period and then move on to seek the next frequency.

**5.** A "scan delay" is a device used in a "termination of signal" receiver to prevent the receiver from resuming its scanning prematurely. If the receiver is tuned to a frequency on which there is a two way conversation, an ordinary "termination of signal" receiver would resume scanning as soon as one party finished speaking and there was a pause in the signal being received. The "scan delay" keeps the receiver tuned to that frequency for a 2 or 3 second interval, a pause long enough to pick up the other side to the conversation. Without the delay feature the "termination of signal" device would continue to scan the frequency range every time there was a short pause in the conversation.

**6.** This memorandum decision was vacated on plaintiff's unopposed request after the case was settled, but as Judge Bartels found: "Judge Stapleton apparently continued to adhere to its logic and analysis and to this extent, it can be given some consideration." *Molinaro v. Sonar Radio Corp.,* 72 Civ. 882 (E.D.N.Y. Oct. 5, 1979) p. 13. In the vacated opinion, Judge Stapleton said of the "scan delay" argument: "More important, however, there remains no dispute, and indeed plaintiff's investigation has confirmed, that each of these devices automatically stops its scan in response to a received signal and remains tuned to that frequency or channel, not for 'predetermined short time interval', but for as long as the signal continues to be received. When the signal terminates, the scan is automatically resumed after a delay of a second or two. While both the Molinaro signal seeking receiver and the Masco devices can be said in one sense to involve a 'time delay', the fact remains that there is no way to read the claims of the patent-in-suit so as to include the mode of operation of any of the Masco devices."

lished memorandum opinion dated January 26, 1979.[7]

Finally, Judge Bartels gave the "scan delay" question its fullest treatment in *Molinaro v. Sonar Radio Corp., supra,* where that question was the central issue in the case.[8] In *Sonar* Judge Bartels wrote of the "scan delay":

> Plaintiffs advocate a wooden application of some of the language of Claim 1 without regard to other language in the claim and specification. When properly construed, however, plaintiffs' patent claim does not include the Sonar device. Nor are the Sonar and Molinaro devices equivalent; they do not perform substantially the same function in substantially the same way to produce substantially the same result. *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929); *Graver Tank & Mfg. Co. v. Linde Air Products Co., supra.* The Sonar receiver automatically stops its scan in response to a received signal and remains tuned to that channel, not for a predetermined short time interval, but for as long as the signal continues to be received. When the signal terminates, scanning resumes after a period of approximately two seconds, unless during that brief time, a signal recurs on that channel. In contrast, Claim 1 of the Molinaro patent describes a time interval device, that is, a device that restarts scanning after a predetermined time interval without regard to whether the signal remains on the air or not. Thus, while carrier delay, as featured in the Sonar device, occurs only after the signal terminates, the Molinaro "predetermined time interval" is the duration of pause on the signal to which the receiver is tuned. The purpose of the Molinaro time interval is to allow the user of the receiver to "sample" the signals or stations broadcast on a frequency range. Thus, while the user of a receiver of the type claimed by the patent-in-suit may, during the time interval, disengage the tuning motor in order to retain a desired signal then being received, the user of Sonar equipment need do nothing to retain a desired channel because the device will not start scanning until the signal has terminated. Thus, the Sonar device does not stop for a short interval on each signal to permit the user to decide whether he desires that signal. *Molinaro v. Sonar Radio Corp.,* 72 Civ. 882 (E.D.N.Y. Oct. 5, 1979), pp. 14–15. (footnote omitted).

Judge Bartels dismissed the action against Sonar at the close of plaintiffs' case and held that the receivers with the "scan delay" feature did not infringe plaintiffs' "time interval" patent.

Based on these previous litigations, it appears clear that defendant's present motion for summary judgment is appropriate and should be granted. Plaintiff Molinaro, however, has offered a statement of disputed facts under Local Rule 9(g), and urges that this raises genuine questions of disputed fact which preclude summary judgment. An examination of plaintiff's claims, however, reveals that almost every one of them is merely the presentation of the "scan delay" argument in another guise, and that those which are not are demonstrably lacking in merit.

■ 1. Molinaro first claims not to be bound by the *Masco* decision since he was not a party to it. However, by affidavit

**7.** At oral argument of the present motion it was disclosed that Judge Weinfeld's grant of summary judgment to defendant Schlumberger was not appealed since the parties reached an undisclosed settlement of some sort.

**8.** In a letter addressed to this Court dated October 5, 1979 seeking an adjournment of the argument on this motion pending the outcome in *Sonar,* counsel for Molinaro wrote:

> The primary issue in *Sonar* is whether or not signal seeking receivers having a "scan delay" function infringe claim 1 of the Molinaro Patent.
>
> It is believed that if the "scan delay" infringement issue is reached on the merits by Judge Bartels in *Sonar,* such a decision could be dispositive of the primary issue in the Sears case presently before your honor. The Sears equipment has a similar scan delay feature and presents an identical issue of infringement.

dated April 16, 1974, Molinaro agreed to, in his own words, "be bound by any Orders or Decisions given by the District Court, the same as they will be binding on Mr. Anthony P. Catanzaro." (affidavit, ¶ 2). Without Molinaro's agreement as assignee of a 50 percent interest in the patent, the case was subject to dismissal for failure to join an indispensable party.

2. Molinaro denies Sears' assertion that it has not sold any "time interval" receivers. The basis of this conclusory statement is that the "scan delay" makes the receivers "time interval" devices, which the three opinions just discussed have held not to be true. Plaintiffs have lost this argument three times.

3. Claim number three is the same conclusory assertion as to different models sold by Sears. Plaintiff here introduces no new facts or issues.

4. Plaintiff asserts that the Sears' receivers have four means covered by the patent-in-suit. Plaintiff ignores, however, subpart 4(c) of the defendant's statement of undisputed facts:

When a received signal is detected the scanning stops and the receiver remains tuned to or locked on that particular channel until the signal terminates, however long that may be.

Plaintiff offers to counter that by stating in his statement 4(c) that the Sears model contains

means to effect automatic restarting of said tuning means after a predetermined short time interval, . . .

Thus plaintiff completely ignores the fact that the Sears' devices do not include a "predetermined short time interval," and that the presence of a "scan delay" does not make them "time interval" devices within the scope of the patent-in-suit.

5. Plaintiff's fifth claim is that the Sears' receivers are station sampling radios as covered by Molinaro's patent. Plaintiff again ignores the limitation on the patent-in-suit as described in 4(c), *supra,* namely that the "scan delay" does not convert the devices into "time interval" receivers. The Sears' receivers simply do not resume scan-

ning until the signal terminates. This may be one minute, or it may be one week, depending on the duration of the signal being received.

6. Plaintiff's sixth statement is again a restatement of the "scan delay" argument, since Sears' devices do not contain, as plaintiff asserts in 6(b)—

Means responsive to a received signal for temporarily stopping the operation of said tuning means during a *predetermined short time interval;* (emphasis supplied)

Claims 7, 8 and 9 are merely paraphrases and reassertions of the "scan delay" argument urged in number 6.

Plaintiff makes three other claims. One is that Judges Metzner and Goettel of this District have held that the patent-in-suit could cover "termination of signal" devices. This is demonstrably incorrect. Several cases had been consolidated for discovery purposes before Judge Metzner by order of the Panel on Multi-District Litigation. Then-Magistrate Goettel assisted in this discovery process. Upon its completion, the cases were returned to their respective districts and the case before Judge Metzner, *Molinaro v. General Electric Co.,* 72 Civ. 2786 (S.D.N.Y.) was settled before going to trial. Neither Judge Metzner nor Judge Goettel made any substantive rulings in the case.

Plaintiff's other remaining statement of alleged disputed genuine fact is that a suit by Molinaro involving Masco devices, *Molinaro v. J. C. Penney Co.,* 72 Civ. 611 (M.D. Pa.), is presently pending and that Masco has intervened. Defendant does not dispute this but argues instead, and this Court agrees, that this information is irrelevant to the issues on the summary judgment motion at hand.

Plaintiff's final claim, numbered 13, is merely a conclusory recapitulation of the by now familiar "scan delay" argument.

 Plaintiff is correct in arguing that summary judgment is inappropriate where there are outstanding questions of disputed

fact, and that such disputes cannot be resolved on the basis of conflicting affidavits. *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theaters, Inc.,* 388 F.2d 272 (2d Cir. 1967), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972). *See also Ethyl Corporation v. Borden, Inc.,* 427 F.2d 206 (3d Cir. 1970) (reversing summary judgment in patent case granted on conflicting affidavits of qualified experts). The present case, however, does not present such a situation.

In deciding the present motion, the Court is not passing judgment on conflicting affidavits, nor crediting one side's presentation of the facts at the expense of the other's. In deciding the present motion, this Court is merely finding and holding that the exact issues raised by plaintiffs have been litigated by them over and over again and lost each time. This Court holds that plaintiffs are collaterally estopped from relitigating those issues yet again in yet another forum.

Accordingly, the complaint for infringement against defendant Sears, Roebuck and Company must be, and hereby is, dismissed, with costs.

So ordered.